IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HTI HOLDINGS, INC., an Oregon
corporation,

                Plaintiff,

v.

HARTFORD CASUALTY INSURANCE
COMPANY, a Delaware corporation,

                Defendant.

Civ. No. 10-6021-AA
OPINION AND ORDER

Aiken, Chief Judge:

Plaintiff HTI Holdings, Inc. (HTI) was insured by defendant Hartford Casualty Insurance

Company (Hartford). During the period of coverage, HTI suffered a loss due to a fire and made a

claim on its policy. The parties disputed both the amount to be paid under the policy and the extent

of coverage. HTI then brought suit alleging breach of contract, negligence, breach of the implied

covenant of good faith and fair dealing, and tortious interference with prospective economic

advantage. In turn, Hartford alleges counterclaims for declaratory judgment and breach of contract.

1  - OPINION AND ORDER

HTI now moves for partial summary judgment on its breach of contract claims and the application of law to its tort claims, and for summary judgment on Hartford's affirmative defenses and counterclaims. In turn, Hartford moves for partial summary judgment on HTI's tort claims and on the interpretation of certain provisions of the insurance policy involving business income and extra expense.

On August 24, 2011, Magistrate Judge Coffin issued his Amended Order and Findings and Recommendation, finding that Oregon law applies to HTI's tort claims and recommending that summary judgment be granted in favor of Hartford on HTI's claims for negligence, tortious breach of the implied covenant of good faith, and tortious interference with prospective economic advantage. Magistrate Judge Coffin also recommends that HTI's motion for summary judgment on its business interruption claims be denied, that Hartford's interpretation regarding business income be adopted, and that both parties' motions for judgment on the extra expense claim be denied. Finally, Magistrate Judge Coffin recommends that Hartford's First, Second, Sixth, Seventh, Eighth, Ninth, Tenth, and Twelfth affirmative defenses be dismissed, and that Hartford's Third, Fourth, Fifth, Eleventh, and Thirteenth affirmative defenses be allowed.

When either party objects to a magistrate judge's Findings and Recommendation, the district court must make a de novo determination of that portion of the magistrate judge's report. See 28 U.S.C. § 636(b)(1); McDonnell Douglas Corp. v. Commodore Business Machines, Inc., 656 F.2d 1309, 1313 (9th Cir. 1981). Both parties filed timely objections, and I give *de novo* review of the parties' objections to the Findings and Recommendation.

## I. BACKGROUND

HTI operated a manufacturing facility in Linn County, Oregon and produced water

2 - OPINION AND ORDER

purification products using specialized technology and equipment. HTI was insured, as it had been since 1999, by a "Spectrum" property insurance policy issued by Hartford (the Policy). Hirsch Decl. Ex. 1 (doc. 121). The Policy generally provided coverage for HTI's property and equipment, and in the event of a loss, coverage for business income and extra expense.

In 2006 and early 2007, HTI found itself struggling financially because expected sales to the United States military did not occur. HTI consequently decided to redirect its sales and marketing to commercial and retail markets. On March 20, 2007, a fire caused significant damage to HTI's manufacturing facility, and HTI timely submitted an insurance claim to Hartford.

Hartford accepted the property damage claim and eventually paid for HTI's manufacturing facility to be rebuilt under the terms of the Policy. On June 5, 2007, HTI's adjuster provided Hartford with a preliminary report estimating $8.8 million in business interruption losses through December 31, 2007, and HTI requested a $2 million advance from Hartford. Hartford initially advanced $150,000 in September 2007, and then another payment of $279,000 in November 2008.

According to HTI, Hartford's failure to make adequate business interruption payments resulted in HTI's inability to cover operating expenses while the manufacturing facility was being rebuilt. After construction of the facility was complete, HTI sold its key assets at less than market prices due to its financial situation, though HTI retained rights and benefits associated with the insurance coverage proceeds. HTI claims that Hartford's failure to compensate the loss of HTI's business income and extra expenses caused the demise of HTI's business and loss to its shareholders.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of

a fact is determined by the substantive law on the issue. T.W. Elec. Serv. Inc. v. Pac. Elec.

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined

by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material

fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of

a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts

which show a genuine issue for trial. Id. at 324. The court must resolve all reasonable doubts as to

the existence of genuine issues of material fact against the moving party and construe all inferences

drawn from the underlying facts in the light most favorable to the nonmoving party. T.W. Elec., 809

F.2d at 630.

## III. DISCUSSION

### A. HTI's Ojections

#### 1. Choice of Law

HTI contends that Magistrate Judge Coffin erroneously applied Oregon law to its tort claims.

HTI contends that because the injurious conduct occurred in California or Connecticut, the law of

one of those states should govern. However, Magistrate Judge Coffin found, and I agree, that the

"state of injury" applies and Oregon law is the proper choice of law under the statute.

Or. Rev. Stat. § 31.875(3)(c) provides in relevant part:

If the injurious conduct occurred in one state and the resulting injury in another state,
the law of the state of conduct governs. However, the law of the state of injury
governs if:

4  - OPINION AND ORDER

>(A) The activities of the person whose conduct caused the injury were
>such as to make foreseeable the occurrence of injury in that state; and

>(B) The injured person formally requests the application of that
>state's law by a pleading or amended pleading. The request shall be
>deemed to encompass all claims and issues against that defendant.

Id. Thus, the law of the state of injury applies if both requisites under §31.875(3)(c)(A) and (B) are

met. Given that HTI's facility was located in Oregon, it was foreseeable that the injury would occur

in Oregon. However, HTI argues that both requirements are not met, because it did not formally

request the application of Oregon law. I disagree. HTI's tort claims are all pled under Oregon law.

Compl. at ¶¶ 73-74, 78, 90. As both requisites of § 31.875(3)(c) are met, the law of the state of

injury - Oregon - governs.

Even if § 31.875(3)(c) was not applicable, § 31.875(4) dictates that Oregon law nevertheless

applies:

>If a party demonstrates that application to a disputed issue of law of a state other than
>the state designated by subsection (2) or (3) of this section is substantially more
>appropriate under the principles of ORS 31.878, that issue is governed by the law of
>the other state.

Or. Rev. Stat. § 31.875(4). "The most appropriate law" is governed by:

>(1) Identifying the states that have a relevant contact with the dispute, such as the
>place of the injurious conduct, the place of the resulting injury, the domicile, habitual
>residence or pertinent place of business of each person, or the place in which the
>relationship between the parties was centered;

>(2) Identifying the policies embodied in the laws of these states on the disputed
>issues . . . .

Or. Rev. Stat. § 31.878. Here, the place of the resulting injury was Oregon, the domicile and

pertinent place of business of HTI was Oregon, and the place in which the relationship was centered

was Oregon. Further, Oregon has a substantial interest in regulating the insurance industry within

5 - OPINION AND ORDER

the state, as evidenced by the state's legislative framework. See, e.g., Or. Rev. Stat. Chap. 742.

Thus, the law of Oregon is most appropriate in this case.

Therefore, for all the foregoing reasons, I agree with Magistrate Judge Coffin that Oregon

law governs HTI's tort claims.

### 2. HTI's Tort Claims

HTI argues that even if Oregon law applies, Magistrate Judge Coffin erred by dismissing

HTI's tort claims for negligence and breach of the implied covenant of good faith and fair dealing.

Magistrate Judge Coffin found that Hartford was not obligated to employ a standard of care

independent of the terms of the Policy and HTI was therefore limited to contract remedies. I agree.

In Oregon, it is possible to pursue a cause of action in tort as well as in contract in limited

circumstances:

> When the relationship involved is between contracting parties, and the gravamen of
> the complaint is that one party caused damage to the other by negligently performing
> its obligations under the contract, then, and even though the relationship between the
> parties arises out of the contract, the injured party may bring a claim for negligence
> if the other party is subject to a standard of care independent of the terms of the
> contract.

Georgetown Reality v. The Home Ins. Co., 313 Or. 97, 106, 831 P.2d 7 (1992). As Magistrate Judge

Coffin pointed out, the relevant question is whether Hartford was "subject to a standard of care

independent of the contract." Findings and Recommendation at 15. If so, HTI may sue in both tort

and in contract; if not, HTI is limited to contract remedies.

Oregon courts have found a standard of care independent of the terms of a contract where a

special fiduciary relationship exists between the parties. See, e.g., id.; Boyer v. Salomon Smith

Barney, 344 Or. 583, 188 P.3d 233 (2008); Farris v. U.S. Fid. & Guar. Co., 284 Or. 453, 587 P.2d

1015 (1978). In these cases, the Oregon Supreme Court explained that a special fiduciary

relationship between the parties could give rise to a duty of loyalty and/or care which subjected the

defendants to tort liability in addition to liability for breach of contract. Typically, such a fiduciary

duty arises when an insurer is delegated the authority to exercise independent judgment on behalf

of the insured, as opposed to the circumstance where the "interests of the insurer come into conflict

with the interests of the insured." Strader v. Grange Mut. Ins. Co., 179 Or. App. 329, 335, 39 P.3d

903 (2002) (internal quotations and citation omitted); see also Farris, 284 Or. at 460, 587 P.2d 1015

("In the present case, defendant did not undertake this fiduciary duty to represent the insured's

interest ... It never undertook any fiduciary duty by purporting to act in the interests of the insured.").

HTI does not present any evidence that a special relationship existed and instead relies on

two recent Oregon Supreme Court cases which discuss the possibility of recovery in tort absent a

special relationship. See Boyer, 344 Or. at 595, 188 P.3d 233; Abraham v. T. Henry Constr., Inc.,

350 Or. 29, 40, 249 P.3d 534 (2011). In Boyer, the court suggested in dicta that "outside sources of

law" such as "industry standards, statutes, or regulations could . . . provide a basis in law for

liability." Boyer, 344 Or. at 595, 188 P.3d 233. Boyer, however, was a "special relationship" case,

and thus did not establish precedent for finding tort liability outside of that circumstance.

Abraham was a construction defect case which held that in certain circumstances, common

law principles could impose a heightened standard of care absent a special relationship or statutory

standards and regulations. Abraham, 350 Or. at 40, 249 P.3d 534. However, Abraham is readily

distinguishable from the instant case. There, the Court held that if a defendant's negligence caused

physical damage to real property, the plaintiff could apply common law principles of negligence to

establish liability in addition to the damages caused by breach of contract. Id. Importantly, the Court

distinguished physical damages from economic losses:

7  - OPINION AND ORDER

> [T]his court's case law is clear that *economic losses*, such as the ones suffered by the
> plaintiff in *Georgetown*, are recoverable in negligence only if the defendant is subject
> to a heightened standard of care, such as one arising out of a special relationship.

Id. (emphasis in original). Thus, the plaintiffs could go forward with their negligence claim if there

was viable evidence of reasonably foreseeable physical damage to real property. Id. In stark contrast

to the issue of tort liability for physical damages, the present case involves only economic losses.

HTI also argues that the Unfair Claims Settlement Practices Act (UCSPA), Or. Rev. Stat. §

746.230, implicitly sets forth the type of standards on which a negligence claim can be premised.

However, it is well established in Oregon, and even acknowledged by HTI, that the UCSPA is not

independently actionable. See Farris, 284 Or. at 458, 587 P.2d 1015; Richardson v. Guardian Life

Ins. Co. of Am., 161 Or. App. 615, 623-24, 984 P.2d 917 (1999). Moreover, the Oregon Supreme

Court has explained that courts should presume that regulatory statutes do not create any civil

obligation/liability:

> The establishment by courts of a civil cause of action based on a criminal or
> regulatory statute is not premised upon legislative intent to create such an action. It
> is obvious that had the legislature intended a civil action it would have provided for
> one, as legislatures many times do. Therefore, the underlying assumption is that it
> was not intended that the statute create any civil obligation or afford civil protection
> against the injuries which it was designed to prevent.

Burnette v. Wahl, 284 Or. 705, 711, 588 P.2d 1105 (1978).

In light of the general rule against private causes of action based on the UCSPA, the lack of

physical injury caused by tortious conduct, and the absence of any evidence of a special fiduciary

relationship, I find that HTI has no basis on which to assert tort claims for economic damages. I

therefore grant summary judgment in favor of Hartford on HTI's tort claims.

Nonetheless, I agree with Magistrate Judge Coffin that HTI may still recover damages for

breach of the implied covenant of good faith and fair dealing which attaches to every contract. See,

8  - OPINION AND ORDER

e.g., Uptown Heights Assoc. v. Seafirst Corp., 320 Or. 638, 645, 891 P.2d 639 (1995). Should a jury find that Hartford arbitrarily refused to pay HTI's claim and therefore frustrated its expectations under the Policy, and that HTI's damages were a foreseeable result of the breach, then damages may be awarded under a breach of contract claim. See McKenzie v. Pacific Health and Life Ins. Co., 118 Or. App. 377, 381, 847 P.2d 879 (1993); see also Eggiman v. Mid-Century Ins. Co., 134 Or. App. 381, 386, 895 P.2d 333 (1995).

### 3. "Business Income" Interpretation

HTI and Hartford filed cross-motions for summary judgment on whether the Policy obligated Hartford to pay for HTI's continuing operating expenses incurred after its manufacturing facility was destroyed by fire. Magistrate Judge Coffin recommends denying HTI's motion for summary judgment and granting Hartford's motion with respect to its interpretation of certain Policy language.

Interpretation of an insurance policy is a matter of law. N. Pac. Ins. Co. v. Hamilton, 332 Or. 20, 24, 22 P.3d 73 (2001). When construing an insurance policy, the court examines the policy's text and applies definition supplied by the policy, with the presumption that the words used have their plain, ordinary meaning. Tualatin Valley Housing v. Truck Ins. Exch., 208 Or. App. 155, 159, 144 P.3d 991 (2006). If the policy provision has only one plausible meaning, the court applies that interpretation. Andres v. Am. Standard Ins. Co., 205 Or. App. 419, 423, 134 P.3d 1061 (2006). If the policy provision has more than one plausible interpretation, the court examines the provision in the context of the entire policy. Id. at 424, 134 P.3d 1061. If the ambiguity persists, the court resolves it in favor of the insured. Hoffman Contr. Co. v. Fred S. James & Co., 313 Or. 464, 475, 836 P.2d 703 (1992). A court should not, however, consider extrinsic evidence in resolving ambiguities in policy provisions. Bresee Homes, Inc. v. Farmers Ins. Exch., 227 Or. App. 587, 594,

9 - OPINION AND ORDER

206 P.3d 1091 (2009).

HTI asserts that the Policy obligates Hartford to pay its continuing operating expenses during the period of restoration, while Hartford maintains that the Policy language obligates it to pay for actual lost profits. The issue of contract interpretation hinges on "business income" as defined in the Policy. The pertinent language states: "We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'" Hirsch Decl. Ex. 1 at 36 (Policy § A.5.o(1)). The Policy defines "business income" as:

(a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and

(b) Continuing normal operating expenses incurred, including payroll.

Hirsch Decl. Ex. 1 at 36 (Policy § A.5.o(4)).

Hartford argues that business income should be interpreted to mean net income "plus" or "added to" normal operating expenses, as in a mathematical equation. If so, business income would be calculated as the sum of net profit or loss and continuing operating expenses. Accordingly, a negative net income (a loss) could offset the amount of operating expenses paid on a claim. On the other hand, HTI argues that business income is defined as net income "as well as" normal operating expenses. Under HTI's interpretation, the net income and continuing operating expenses would be calculated independently and paid out separately on a claim. Accordingly, a negative net income (loss) would not affect the amount paid for operating expenses, according to HTI.

The first step in contract interpretation is examining the text and applying the definition supplied by the Policy with the presumption that words have their plain, ordinary meaning. Tualatin Valley, 208 Or. at 159, 144 P.3d 991. Here, "business income" has a specific meaning under Policy § A.5.o(4)(a) and (b) as net profit or loss and normal operating expenses. Specifically, § A.5.o(4)(a)

provides that Net Income is projected "Net Profit or Loss" that would have been earned or incurred. By including "Loss" in the provision, the Policy infers that losses are considered in the calculation of business income. Under HTI's interpretation, when an insured is projected to have a negative net income, that net loss should be disregarded in the calculation of business income. See Amerigraphics, Inc. v. Mercury Cas. Ins. Co., 182 Cal. App. 4th 1538, 1552 (2010). This begs the question: if net loss is never considered when calculating business income, why include the term in the Policy at all? The answer is clear: the term must have effect in the provision.

I agree with Magistrate Judge Coffin that only plausible interpretation is to give meaning to all of the terms in the provision. As the Policy defines business income, in part, as a calculation of "Net Profit or Loss," the term "Loss" must be given meaning. In the context of the provision, the only plausible meaning of "Loss" in § A.5.o(4)(a) is that a net loss affects the calculation of business income by offsetting operating expenses. This interpretation has been accepted by the majority of courts who have addressed such policy language. See, e.g., Dictiomatic Inc. v. U.S. Fidelity & Guar. Co., 958 F. Supp. 594, 602-03 (S.D. Fla. 1997); Liberty Mutual Ins. Co. v. Sexton Foods Co. Inc., 854 S.W.2d 365, 367 (Ark. App. 1993); Continental Ins. Co. v. DNE Corp., 834 S.W.2d 930, 932-34 (Tenn. 1992). The Ninth Circuit has taken the same approach in interpreting a very similar (if not identical) insurance provision under Nevada law. Polymer Plastics Corp. v. Hartford Cas. Ins. Co., 389 Fed. Appx. 703 705-06 (9th Cir. 2010).

Furthermore, § A.5.o(1) of the Policy provides coverage for "actual loss of business income." While "actual loss" is not specifically defined in the Policy, the plain meaning of the phrase is consistent with Hartford's interpretation that a net loss must be included in the calculation of business income.

11 - OPINION AND ORDER

Magistrate Judge Coffin's reasoning is consistent with the general insurance tenet that the insurer will put the insured back in the position it would have been in absent the direct physical loss or damage that occurred. See, e.g., B.F. Carvin Const. Co., Inc. v. CNA Ins. Co., 2008 WL 5784516 at *3 (E.D. La. July 14, 2008) (construing a similar policy and stating that "this type of policy is designed to prevent the insured from being placed in a *better* position than if no loss or interruption of business had occurred") (citation omitted); Dictiomatic, 958 F. Supp. at 605; Liberty Mutual, 854 S.W.2d at 367; Continental, 834 S.W.2d at 934. Thus, I agree with Magistrate Judge Coffin that the only plausible interpretation of the Policy - which gives meaning to all of its terms and places an insured in the same economic position as it would have been in absent property damage - is that business income is the sum of the net profit or loss and continuing operating expenses.

Accordingly, HTI's motion for partial summary judgment on its business income claims is denied, and Hartford's motion for partial summary judgment regarding the interpretation of business income is granted.

### 4. Extra Expense Claim

HTI seeks summary judgment on its claim that Hartford breached the Policy by failing to pay HTI's extra expense claim and that HTI is entitled to $675,907.31 plus prejudgment interest. According to HTI, Hartford has never accepted, denied, or provided any written explanation for its refusal to pay the claim. HTI argues that Magistrate Judge Coffin denied its motion for summary judgment without identifying any genuine issue of material fact that would prevent HTI from obtaining coverage for its extra expense claim. I disagree with HTI's assessment of Magistrate Judge Coffin's ruling and adopt his recommendation denying summary judgment.

Magistrate Judge Coffin found that "a reasonable jury could conclude that the bank did not

renew HTI's line of credit due to the fire" and that a material dispute of fact existed regarding the cause of both the First and Second Private Placements and resulting coverage under the Policy. Findings and Recommendation at 27. As it would be inappropriate to grant summary judgment for either party where a dispute of material fact existed, I find no error. Moreover, I agree that issues of material fact remain as to the reason for the bank's refusal to renew HTI's line of credit and whether HTI's request for an additional line of credit was in fact due to the fire. Therefore, I deny HTI's motion for summary judgment.

### 5. Counterclaim Based on Fraudulent Conduct

In its Amended Answer, Affirmative Defenses, and Counterclaims, Hartford alleges counterclaims for Declaratory Judgment and Breach of Contract. Hartford alleges that HTI engaged in fraud, misrepresentation, and concealment - actions which Hartford maintains voided the underlying insurance policy and therefore bar HTI's recovery on its claims. Hartford argues that it is also entitled to reimbursement from HTI for the amount Hartford previously paid on the claim plus prejudgment interest. HTI moved for summary judgment on the counterclaims, arguing that it was "sandbagged" by Hartford's counterclaims and that Hartford failed to establish the requisite elements for a fraud claim. HTI further submits that the testimony of Hartford's two 30(b)(6) witnesses contradict Hartford's fraud allegations. Finally, HTI argues that Hartford is estopped from asserting this counterclaim.

### a. Sufficiency of Pleadings and Evidence of Reliance

HTI argues that it was "sandbagged" when Hartford added facts to its counterclaims with respect to six additional vendors days before the deadline for filing dispositive motions. HTI argues that it was unfairly prejudiced because Hartford's motion to amend its answer included fraud

13 - OPINION AND ORDER

allegations involving only one vendor, but its Amended Answer included allegations about seven

vendors. HTI claims that Hartford's amended answer did not provide sufficient notice of the scope

of the counterclaim and it should therefore be barred. HTI points to a number of cases in an effort

to persuade this court to grant summary judgment. See Pickern v. Pier 1 Imps. (U.S.), Inc., 457 F.3d

963, 968 (9th Cir. 2006) (granting summary judgment to defendant when plaintiff attempted to

present new factual allegations not set forth in complaint); Wasco Prods. v. Southwall Techs., Inc.,

435 F.3d 989, 992 (9th Cir. 2006) (holding plaintiff was not allowed to toll the statute of limitations

on a conspiracy claim when it failed to allege the requisite elements for conspiracy); Acri v. Int'l

Ass'n of Machinists, 781 F.2d 1393, 1398-99 (9th Cir. 1986) (finding that a district court did not

abuse its discretion in denying leave to amend a complaint which the court determined was requested

merely for tactical reasons).

HTI's argument is based on the assumption that Hartford is alleging common law fraud in

it counterclaims and therefore is subject to the pleading requirements of Fed. R. Civ. P. 9(b), which

requires that parties alleging fraud state their claims with heightened factual particularity. However,

Hartford is not alleging counterclaims for common law fraud, but rather for breach of the Policy's

provision regarding "concealment, misrepresentation, or fraud." See Or. Rev. Stat. § 742.208(1) (an

insurance policy shall be void if insured has willfully concealed or misrepresented any material fact,

or committed fraud or false swearing); Mutual of Enumclaw Ins. Co. v. McBride, 295 Or. 398, 403-

04, 667 P.2d 494 (1983) (holding that the burden of proof for insurance fraud or false swearing is

different than that of common law fraud, since in the insurance policy context, since insurance fraud

is merely a breach of contract). Because Hartford's counterclaims are based on breach of contract,

not common law fraud, the heightened pleading requirements are inapplicable.

14 - OPINION AND ORDER

Additionally, as Magistrate Judge Coffin found, the factual basis for adding those vendors was well known to both parties, and Hartford's amended answer and an outline provided during discovery gave HTI fair notice of the claims. Further, there is sufficient evidence in the record to infer that Hartford did not have knowledge of the scope of HTI's alleged fraud until after the commencement of litigation.

HTI also argues that Hartford has not provided evidence of willful misrepresentation or reliance on misrepresentation to sustain separate claims of fraud with respect to each vendor contemplated under the contract. HTI contends that Hartford's counterclaim must be construed as separate claims with respect to each vendor for pleading purposes, and that Hartford must establish the element of reliance for each one. However, under the Policy and established Oregon law, an insurance "policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." Or. Rev. Stat. § 742.208(1); see also Ward v. Queen City Fire Ins. Co., 69 Or. 347, 351, 138 P. 1067 (1914) (finding that "policies of insurance become void in case of fraud or false swearing by the insured touching any matter relating to the insurance, or the subject thereof"). Accordingly, in order to sustain its counterclaim, Hartford need only show that it relied to its detriment on any material misrepresentation or fraudulent conduct of HTI.

HTI further argues that because Hartford denied coverage regarding certain vendors under the Policy, Hartford cannot establish reliance. HTI argues that to the extent that Hartford acted to its detriment in extending resources and expense in investigating claims, mere investigation expense is insufficient to establish reliance on its alleged misrepresentations. See Allstate Ins. Co. v. Breeden,

216 Fed. Appx. 655, 659-60 (9th Cir. 2007) (citing Oregon caselaw); Truck Ins. Exch. v. Kafka, 911 F. Supp. 313, 315 (N.D. Ill. 1995)).

In order to show reliance, 'there must be evidence that one has acted or refrained from acting to his or her detriment." Eslamizar v. Am. States Ins. Co., 134 Or. App. 138, 143, 894 P.2d 1195 (1995). Hartford maintains that HTI made misrepresentations in calculating its loss of business, which Hartford relied upon for nearly every vendor under the Policy, by misrepresenting preliminary negotiations with vendors as final distribution agreements. For example, Hartford submits that HTI and its vendor Reliance never made a final agreement with regard to price per unit; however, HTI's business loss claim included in excess of $300,000 in sales to Reliance. Relying on the alleged misrepresentation, Hartford made a payment on at least some portion of the claim to Reliance. Hartford further alleges that Reliance backed out of the agreement for reasons unrelated to the fire. HTI disputes these assertions, claiming that it had reached a final agreement on price with Reliance.

As explained above, Oregon law requires the insurer to show that it relied to its detriment on a misrepresentation of fact under an insurance policy to void the entire policy. Therefore, by presenting evidence of a genuine issue of material fact regarding payments to any vendor under the Policy, Hartford has met its burden. Drawing all inferences in favor of the non-moving party, at least one issue of material fact exists as to whether Hartford paid a claim based on a material misrepresentation as to the status of an agreement between HTI and Reliance.

Finally, I adopt Magistrate Judge Coffin's finding regarding any alleged contradiction between Hartford's corporate representative's testimony and the counterclaim allegations. HTI has not offered anything new in its objections to prevail on this issue. The mere fact that Hartford's adjustors did not know of fraud until it was discovered in the course of litigation is not sufficient to

16 - OPINION AND ORDER

grant summary judgment for HTI.

      b. Estoppel

      HTI also argues that Hartford is estopped from pursuing its breach of contract counterclaim,

because Hartford did not allege breach of contract through concealment/misrepresentation/fraud in

its original answer and counterclaims, even though it had knowledge of the facts supporting the

counterclaim. In so arguing, HTI relies on Ward, where the Oregon Supreme Court held:

> Where a party gives reason for his conduct and decision touching anything in the
> action in a controversy, he cannot, after litigation has begun, change his ground, and
> put his conduct upon another and a different consideration.

Ward, 69 Or. at 352, 138 P. 1067 (citations omitted). In Ward, however, the insurer was estopped

from "changing his ground" because it had prior knowledge of the facts supporting the claims it

attempted to add after litigation commenced. "[D]efendant should not be permitted to screen itself

from liability on grounds other than the one specified in the letter indited by its legal representative,

provided defendant had informed itself prior to the letter of the cause of the fire, and was in

possession of the material which it now claims exculpates it from liability." Id. at 352-53, 138 P.

1067. Therefore, in order for HTI to invoke estoppel and preclude the counterclaim, it must show

that Hartford had knowledge of concealment/misrepresentation/fraud that is the basis for the alleged

breach. I do not find that HTI has demonstrated that Hartford had such knowledge at the outset of

litigation. To the contrary, Hartford submits evidence that it was unaware of the facts supporting its

counterclaim allegations of breach until certain evidence was unearthed in discovery. See Def.'s

Opp'n to Pl.'s Objections at 22-24 & Addendum. Accordingly, questions of fact remain and

preclude summary judgment.

      Furthermore, HTI has not persuaded me that it need not establish the elements of equitable

17 - OPINION AND ORDER

estoppel. Under Oregon law, equitable estoppel requires:

> (1) a false representation; (2) made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it was made with the intention that it should be acted upon by the other party; (5) and the other party must have been induced to act upon it.

Bruer's Contract Cutting v. Nat'l Council on Compensation Ins., 116 Or. App. 485, 489-90, 841

P.2d 690 (1992) (quoting Oregon v. Portland Gen. Elec. Co., 52 Or. 502, 528, 95 P. 722 (1908)).

HTI argues that the elements of equitable estoppel do not apply to its estoppel defense because it "is

not asserting an affirmative claim for estoppel seeking to eradicate Hartford's fraud contention" but

rather is asserting the equitable defense of estoppel to preclude Hartford from "maintaining its

affirmative counterclaims." Pl.'s Reply Mem. Supp. Obj. at 19. This argument is unpersuasive.

Essentially, in order to be estopped from bringing a counterclaim, Hartford must be shown to have

knowingly partaken in wrongful activity with the intent to induce reliance. That showing has not

been made here. I therefore adopt the findings and recommendation of Magistrate Judge Coffin on

the estoppel issue.

### 6. Affirmative Defenses

HTI argues that Hartford has failed to substantiate most of its affirmative defenses, and

therefore the court should dismiss those claims as a matter of law. The parties agree that Hartford

has withdrawn its First, Second, Sixth, Seventh, Eighth, Ninth, Tenth, and Twelfth affirmative

defenses. Accordingly, those defenses are dismissed.

Magistrate Judge Coffin found that Hartford has established sufficient evidence to

substantiate its Third, Fourth, Fifth, Eleventh, and Thirteenth affirmative defenses. HTI argues that

the Magistrate failed to state reasons for denying its motion to dismiss those defenses. After *de novo*

review, I adopt Magistrate Judge Coffin's Findings and Recommendation.

18 - OPINION AND ORDER

The Third and Fourth affirmative defenses, for "Failure to Cooperate" and "Late Notice and Proof of Loss," have been sufficiently supported by evidence in the record and therefore are maintained. As already discussed, Hartford has presented evidence that the HTI concealed and/or misrepresented information or was otherwise fraudulent with respect to its claims. While HTI argues that the defenses should be precluded because the testimony of two witnesses who were not aware of facts supporting the defenses, the argument is unavailing because those witnesses were not Hartford's Rule 30(b)(6) witnesses for purposes of the affirmative defenses. Hartford has further presented sufficient evidence to create an issue of material fact as to the Third and Fourth defenses, in that Hartford spent additional time and resources investigating HTI's claim representations before and during litigation, and it made payments on the claim.

Likewise, the Fifth, Eleventh, and Thirteenth affirmative defenses, "Policy Defenses," "Failure of Condition Precedent," and "Misrepresentation" have been sufficiently supported by evidence in the record, and therefore are maintained. As outlined earlier in this order, Hartford has provided evidence that HTI concealed, misrepresented, or was fraudulent in its claims on the Policy. I therefore adopt Magistrate Judge Coffin's recommendations regarding the affirmative defenses.

B. Hartford's Objection

Hartford's sole objection to the Findings and Recommendation is in regard to HTI's extra expense claim. Hartford contends that Magistrate Judge Coffin found that "a debt is incurred when the debtor first becomes legally obligated to pay" in reliance on In re CHG Int'l, Inc., 897 F.2d 1479, 1486 (9th Cir. 1990), a case that was implicitly overruled by the Supreme Court in Union Bank v. Wolas, 502 U.S. 151, 162 (1991). Hartford argues that reliance on In re CHG is misplaced and renders incorrect Magistrate Judge Coffin's finding that interest accruing outside of the 12-month

period of coverage was an extra expense.

In re CHG was a bankruptcy case holding that payments of long term debt were not protected under the ordinary course of business exception to the trustee's power to avoid preferential transfers under 11 U.S.C. § 547(c)(2). In re CHG, 897 F.2d at 1485-86. The Supreme Court overruled In re CHG on that point, holding that payments on long-term debt could indeed qualify for the ordinary business exception. Union Bank, 502 U.S. at 162; see also In re IRFM, Inc., 138 B.R. 595, 602 n.15 (Bankr. C.D. Cal.1992). While I agree with Hartford that In re CHG was implicitly overruled in part by Union Bank, Magistrate Judge Coffin's finding remains unaffected because the Supreme Court did not address the issue of when a legal obligation on interest is incurred. Union Bank, 502 U.S. at 156 n.9.

Hartford's reliance on In re Iowa Premium Serv. Co., 695 F.2d 1109 (8th Cir. 1982) is likewise unpersuasive. In Iowa Premium, the court found that interest payments on a long term loan are not incurred until the interest accrues. Id. at 1111-12. However, subsequent decisions have yielded the opposite result. See In re CHG, 897 F.2d at 1486; see also In re Tanner Family, LLC, 556 F.3d 1194, 1197 (11th Cir. 2009). Furthermore,

> a number of courts have specifically rejected the conclusion, expressed in *Iowa Premium Service*, that interest debt is incurred as it becomes due and payable, favoring, rather, the view that interest, like principal, is incurred on the date the loan is made.

In re Enron Corp., 357 B.R. 32, 44 (Bankr. S.D.N.Y. 2006) (citing cases). Similarly, a Maine bankruptcy court found:

> [T]he *Iowa Premium* court has taken a rather artificial and unnecessarily limited view of what occurs when a long-term loan is made. A loan is not really an ongoing series of transactions between the parties but a single transaction in which the debtor receives the principal and in consideration agrees to repay it along with whatever interest accrues. While the payment of interest may be contingent, the obligation to

20 - OPINION AND ORDER

pay it, if necessary, arises when the debtor gets a property interest in the consideration exchanged.

In re Acme-Dunham Inc., 50 B.R. 734, 741 (D. Me. 1985). A number of other courts have reached a similar conclusion about the time at which a long term debt subject to periodic payments is incurred. See, e.g., In re MarkAir, Inc., 240 B.R. 581, 592 (Bankr. D. Alaska 1999); In re Western World Funding, Inc., 54 B.R. 470, 480 (Bankr. D. Nev. 1985); In re Callaway, 2008 WL 4261087 at *4 (Bankr. D. Idaho Sept. 12, 2008).

In this case, it is undisputed that HTI entered into two private placements within the twelve-month period following the fire at HTI's manufacturing facility. The Policy states: "We will pay reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property. . ." if such Extra Expense "occurs within 12 consecutive months after the date of the physical loss or physical damage." Hirsch Decl. Ex. 1 at 36-37 (Policy § A.5.p(1), (3)). The date of loss in this case was March 20, 2007, and both placements occurred before the 12-month window closed on March 20, 2008. Moreover, any ambiguity that exists regarding the occur/incur terms must be construed in favor of the insured. Hoffman, 313 Or. at 475, 836 P.2d 703. Therefore, as I agree with the Magistrate Judge Coffin that the debt for interest was incurred at the time of the contractual agreements for the placements, I find that those agreements qualify as extra expenses.

## CONCLUSION

For the reasons explained above, it is HEREBY ORDERED that Magistrate Judge Coffin's Amended Order and Findings and Recommendation (doc. 191) filed August 24, 2011 is ADOPTED in its entirety. HTI's Motion for Partial Summary Judgment (doc. 118) is GRANTED in part and DENIED in part, and HTI's Motion for Summary Judgment as to Hartford's Counterclaims (doc.

21 - OPINION AND ORDER

119) is DENIED. Hartford's Renewed Motion for Partial Summary Judgment (doc. 115) is GRANTED and its Cross-Motion for Partial Summary Judgment (doc. 139) is GRANTED in part and DENIED in part. Specifically, Hartford's Motion for Summary Judgment on HTI's Negligence, Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing, and Tortious Interference with Prospective Economic Advantage claims is GRANTED. HTI's Motion for Partial Summary Judgment on its business interruption claim is DENIED, and Hartford's motion for a finding that the method for calculating business income under the Policy is the sum of net profit or loss and continuing operating expenses is GRANTED. The parties' Motions for Partial Summary Judgment are DENIED as to the extra expense claim. HTI's Motion for Summary Judgment is GRANTED with respect to Hartford's First, Second, Sixth, Seventh, Eighth, Ninth, Tenth, and Twelfth affirmative defenses and DENIED with respect to Hartford's Third, Fourth, Fifth, Eleventh, and Thirteenth affirmative defenses.

IT IS SO ORDERED.

Dated on this ⬚ day of December, 2011.

Ann Aiken
United States District Judge

22 - OPINION AND ORDER